We'll hear argument now in United States v. Carr. Good morning. Mr. Harbert. Thank you, Your Honor. Good morning, and may it please the Court. This appeal raises the question of whether Illinois armed robbery is a categorical crime of violence. To decide that question, the Court has to do two things. First, you have to determine the scope of Illinois state law. And then second, you have to take the least culpable, least serious conduct that would constitute robbery under state law and determine whether that fits within the federal definition of a crime of violence that's set out in the sentencing guidelines. So at the first step in determining the scope of Illinois' armed robbery, you need to consider the state's common design doctrine. The reason for that is because common design is a means of committing armed robbery. The state has made it very clear that it is not a separate offense. Is the government correct that under Carr's theory on the Illinois common design doctrine, no crime in Illinois, including murder, could be a crime of violence for federal sentencing purposes? I mean, like, is there any limit to his common design analysis? Your Honor, common design is an incredibly broad doctrine. And Illinois has made a decision to expand liability beyond the scope of every other state and beyond the scope of federal law as well. And so because of that, I think it is quite possible that Illinois, as a categorical matter, sweeps beyond the definition of what counts as a crime of violence, including for offenses like murder. You say quite possible. Can you think of any crime under your argument that would not qualify? I can't, Your Honor. I think the point I would make here is we are raising this argument as to robbery, and so I don't know that the court needs to reach out and decide how other Illinois state offenses may or may not count. But don't we have to think about how your argument will affect, you know, we sit here and we define the future. That's what we do. Your Honor, I think you do have to consider it, and I think it is quite clear that this is a broad. Illinois has made a choice to have a very broad rule, and that will have consequences beyond robbery. Would we have to split, of course, from the Eighth Circuit in, you know, U.S. versus Bragg in order to accept your argument? I don't think so, Your Honor. I think the Eighth Circuit has essentially adopted the theory that we have adopted here, not in Bragg, but in cases like Yackel and Boleyn. They've said you need to analyze an overbroad state aiding and abetting doctrine essentially in the same way that we do, that if the doctrine is too broad and it goes beyond the scope of generic aiding and abetting, then it creates overbreadth for the purposes of the categorical approach. I believe the Bragg case is dealing with the recklessness aspect of Illinois robbery, but I don't think Bragg says anything as to Illinois' common design theory. I think the question of how common design affects the categorical approach is a question of first impression for this court and, frankly, for any federal court. Why do we have to consider that, though, under the strict categorical approach, where we just look at the certified conviction that shows he was convicted of robbery and doesn't have anything about common design, which is a separate statute in Illinois? It's a separate statute, Your Honor, but it's a single offense, and what Mathis says is that for the purposes of the categorical approach, the only thing that defines an offense are the elements that need to be proven unanimously to a jury, and here common design is not that. Under Illinois law, if you have a robbery conviction where six jurors think that he's guilty as a principal and six jurors think he's guilty under a common design theory, that's a conviction rather than a mistrial, and so that means common design has to come into the court's analysis here, and that's clear from Mathis. That's clear from the analysis the Supreme Court does in Duane S. Alvarez, and that's also how the other circuit courts have analyzed this, including the Ninth Circuit in that recent Anbanc-Alford decision, which resides in the 28J letter. May I take you to the claim that the district court mistakenly believed that the BOP would, the Bureau of Prisons? I'm sorry, Jekyll. That the Bureau of Prisons would credit the time that Carr was held in state custody at a federal facility? Absolutely. What part of the district court's statement was incorrect? Your Honor, it's the statement on page 36 of the appendix where he says that Carr is going to receive credit for all time in federal custody, and in the context of that discussion, we're talking about time that Mr. Carr was in the physical custody of the U.S. Marshals, and the court's analysis, well, essentially the court doesn't engage in analysis. To the extent we're trying to make this argument that that's not time that Carr is going to get credited, Judge Norville's response is he is going to get credited for it. Therefore, I don't need to look at what Illinois is going to do and make a determination about whether Illinois is going to count it towards the parole sentence. Isn't it literally true that the Bureau of Prisons will calculate credits for the time spent in federal custody on the charges before the court, and Mr. Carr did not make clear that he was asking not for a credit, but for a sentence reduction on the federal sentence for the time he spent in custody for unrelated state crimes, right? Your Honor, a few points. First, I think Mr. Carr does make it clear, and especially in the written sentencing memo, he makes it very clear to frame his request as a request for a sentence reduction. The second point I would make is, as this court has used the term custody, there are essentially two meanings to custody, which this court, occasionally the same decision, uses it in both aspects. One aspect is physical custody, where you are being held, under whose authority you are being physically held, and in that aspect, Mr. Carr is clearly in federal custody because the U.S. Marshals are holding him. There's a secondary sense of custody, which is the legal custody or the jurisdiction that Mr. Carr is being held under, and I think when you look at the sentencing transcript, it's clear that Judge Norgal was referring to custody in that first sense, in the sense of where he is in physical custody. And the reason I think we know that from context is that when Mr. Carr tries to raise this issue of why the state still has jurisdiction over Carr, and therefore that time's not going to get counted, the district court shuts off that discussion and says, that doesn't matter, he was in federal custody, therefore it's going to count. And that's legally incorrect, and so I think that's the district court's error, and I think that legal error is what constitutes the abuse of discretion. It also seemed like counsel tried several times with the court to explain the distinction between credit and sentencing reduction under 3553A and was shut down for whatever reason. The court didn't want to hear it. Your Honor, having been at that sentencing hearing, I would have to agree with you. I think there could have been a more fulsome discussion of why Mr. Carr was not going to essentially get the 14 months, and the district court wasn't interested in hearing it. And so I think on that aspect, the court could at the very least give a limited remand so that this court can be sure the district court is applying the correct analysis. If sentencing judges retired, a limited remand would be pointless. Well, Your Honor, I think certainly a general remand then to decide whether you should get this credit would be an appropriate thing for the court to do. To jump back to the guidelines issue and to the question of Illinois' overbreadth here, there are two aspects to the federal definition of what counts as a crime of violence. The first is the enumerated offense clause, which says generic robbery is a crime of violence. The analysis the court has to do there is the same analysis that the Supreme Court did in Buenos Aires, where generic robbery incorporates generic eating and abetting, which the Supreme Court has said is the natural and probable consequence. But Buenos Aires was really different because the statute at issue there, unlike robbery, specifically contained the eating and abetting element, which makes it, when you're comparing statute to statute, reasonable or appropriate under the categorical approach to look at that. But this statute, there's a separate statute for the common design theory, as you... That's right, Your Honor, but I would say Duenas-Alvarez rejected the idea that that makes a difference. And this is the Ninth Circuit decision below, and Duenas-Alvarez said California law is different because it expressly incorporates eating and abetting. When it goes up to the Supreme Court, the Supreme Court says that's a distinction about a difference. Every state incorporates eating and abetting. So the relevant question is, is this generic eating and abetting or is it special eating and abetting? And again, I would point to that very recent Ninth Circuit decision, this Alford decision, which says, you know, essentially that's exactly what Duenas-Alvarez holds. And so, therefore, we do need to engage in that analysis. But you would agree there's a circuit split on that issue already that others have? No, Your Honor. I think every circuit court that's considered this, and that would be the Ninth Circuit, the Eleventh Circuit in Borotakis and in a case called Coates, as well as the Eighth Circuit in that Bolin and Yaffo case that I've mentioned, have all said where eating and abetting is overbroad and it's special, that creates overbreadth. But I believe it was the Eleventh Circuit and the Eighth Circuit, or the statute at issue, had the eating and abetting embedded in the statute. They weren't looking separately. I may have one of the circuits off, but several of the circuits that came to that conclusion were dealing with statutes that had eating and abetting built into them. Your Honor, the Eighth Circuit has analyzed it both ways. One time it was embedded, and the other time it was implicit, and they've come to the same conclusion both times. The same is true for the Eleventh Circuit. The Borotakis decision is similar to the Illinois situation we have here, where it's implicit, as is the Ninth Circuit Alford decision. So, frankly, every time a circuit court has considered an implicit but overbroad eating and abetting statute, they've said that matters for purposes of the categorical approach. I think the place where you do see courts reaching a different result is in the context of federal eating and abetting. And it is certainly true that Section 2 is categorically a crime of violence. But the reason for that is because the Force Clause incorporates a federal standard. And the Force Clause, you know, in the Supreme Court's Borden decision, they say the question under the Force Clause is whether the state offense necessarily involves the defendant's use, attempted use, or threatened use of physical force against the person of another. So that would work. That argument would apply to the Elements Clause. Because, as you started out by saying, when analyzing the categorical approach under the Elements Clause, you have to look at the least culpable conduct covered by the statute. But how does that same argument apply to the Enumerated Clause, which we have here and is absent from some of those other analyses? Sure. So, Your Honor, for the Enumerated Offense Clause, again, it's this Duenas-Alvarez analysis, where the Enumerated Offense of generic robbery incorporates the generic eating and abetting doctrine, which only imposes liability for natural and probable consequences, or, in other words, for reasonably foreseeable consequences. Illinois has explicitly rejected that limitation. They've said it doesn't have to be a natural and probable consequence. It doesn't have to be a reasonably foreseeable consequence. Any crime that's committed in furtherance of an original, nonviolent, even misdemeanor design is going to create liability under Illinois law, and they call it a misdemeanor murder rule. No other state and federal law imposes liability in that situation. Yeah. I really don't—I don't know. I have to go back to the fact that what I fear about the theory is that it would apply so broadly that few, if any, crimes could be considered crimes of violence in Illinois if we take the argument to its logical conclusion. And you've got to help me. Your Honor, I think the answer is the Supreme Court has said this is what the categorical approach is. They've said it again and again, even when lower courts have said this is, you know, not what Congress could have intended, this is not reasonable. The Supreme Court has made it clear this is the analysis that the court needs to do, and I think until the Supreme Court— So, in other words, there are no stopping points. Your answer to Judge Rogner is no crime in Illinois ever counts as a crime of violence for federal purposes. Until the Supreme Court says differently, Your Honor. That might be tomorrow. I think that the reason—well, I think that the place the court— well, I'll save the remainder of my time for rebuttal. Thank you. Ms. Alexakis. Good morning, and may it please the court. Georgia Alexakis, representing the United States. This court should affirm the defendant's sentence. Under circuit precedent, Illinois robbery, the sole statute under which defendant was convicted, is a crime of violence under both the Elements Clause and the Enumerated Offense Clause of the Guidelines. The existence of Illinois' Common Design Doctrine, codified in a wholly separate Illinois statute, does not bear on the categorical approach, and therefore does not alter this precedent. It certainly doesn't lead to the outcome that Judge Rogner fears, and that defendant concedes is, quote, quite possible, that no Illinois crime would ever be a predicate offense. And the government will go further and say that in the slippery slope that the defendant has set in motion, no crime from any jurisdiction that has a natural and probable consequences doctrine in place, like the California doctrine that Duane S. Alvarez situated in the mainstream, no crime from any of those jurisdictions, which number anywhere between 12 to 28, depending on which source you're looking at, none of those crimes would also count as predicate crimes of violence. Does it matter? Go ahead. Ms. Alexa, I guess, is Carte correct that Illinois treats the Common Design Doctrine as part of every criminal statute and it need not be separately charged? It is my understanding, Judge Rogner, that it is theoretically a possibility in every case, that it does not have to be explicitly charged, and yet that if a prosecutor proceeds under that theory at a trial, that there are jury instructions, I think cited in the government's brief, that would be given to the jury. You know, I thought that Carr made a fairly compelling argument that Illinois has a dispense with federal law's reasonable foreseeability requirements for accomplice liability. What is your best argument that Illinois law is not broader than federal law on foreseeability? Sure. So two responses, Judge. One is that I don't actually think the correct benchmark is federal aiding and abetting, for example, as the Supreme Court defined in Rosemond. I think the question is generic aiding and abetting, which is the benchmark that the Supreme Court followed in Duenas-Alvarez, and which even the Ninth Circuit, in this opinion that the defendant relies on, this recent opinion, formulated. So that's one response, that the benchmark isn't really Section 2. The benchmark is generic aiding and abetting,  The other response I have to you, Judge. Could you stop, and if you can keep that other response, because, you know, do you think that Garland, Alfred versus Garland, that, you know, the newest from the Ninth, do you think it's distinguishable from the circumstances here? I think it is. I think Alfred took a wrong turn in this categorical approach analysis. And I think, in particular, what Alfred did was gloss over the distinction that Judge Signeve was asking questions about earlier about the difference between the aiding and abetting theory, or the accomplice theory of accountability being embedded in the statute of conviction versus not being in the statute of conviction. And that's, if you read Alfred, that's obviously a point of contention between the plurality in Alfred and the concurrence in Alfred. And respectfully, I think the concurrence has it right. Because what it points out, interestingly, is that the plurality deviates from the categorical approach's underlying concern in going outside the statute of conviction. So the categorical approach, as we all know, is focused on the offense of conviction, the elements of the offense, what a prosecutor necessarily has to prove in order to secure a conviction. And then the plurality in Alfred starts talking about the importance of distinguishing degrees of culpability and how that is a factor that plays a role at sentencing. But that's not really what the categorical approach is about. The categorical approach is not about how a defendant committed the offense, how they participated in the offense, how the prosecutor secured the conviction. It's simply about a categorical analysis of the offense. What is the offense of conviction? What are the definitional, the constituent parts? And we know that from Mathis, right? What are the constituent parts of this offense? And so I think Alfred, the plurality in Alfred, takes a wrong turn in its analysis by deviating from what the underlying premise of the categorical approach is. Now, I also understand defendant to be arguing that here, setting aside this distinction between whether the accomplice liability theory is in the statute of conviction or otherwise is essentially saying, well, let's sweep in this additional means of committing the offense and consider that as fundamental to the definition of Illinois robbery. But I think that that argument overlooks the distinction, overlooks the point that has been made multiple times by this court, by other courts, most recently by this court in Worthen, that legally, there is no difference between a principle of an offense and an accomplice to an offense. And so we can sweep in. I suppose we could sweep in this aiding and abetting theory that Illinois has. And yet, legally, it doesn't make a difference. Once, as this court explained in Worthen, where once the offense of conviction satisfies the elements clause, the defendant legally has necessarily used the force or threatened to use the force and therefore has necessarily committed that crime of violence. Does it matter if we apply the categorical approach to the elements clause versus the enumerated clause, given that the test is different and the elements clause tells us to look at the least culpable conduct covered by the statute? I think, with respect to each clause, the analysis is different. But you get to the same results. I think Worthen is the least culpable sweep in the Illinois accomplice theory. I think, well, I guess one response would be, I don't think we look outside the statute. And so I think what we have here in Illinois is a different situation than what we had in California or in Yackel or in Bowie, Coates. There's a whole series of federal appeals courts where they only analyze this aiding and abetting theory of liability where it appeared in the statute of conviction. But setting that aside, in a world in which we are still going to consider, we're going to sweep in sort of the Illinois common design doctrine, that least culpable means of committing robbery. Because it is an accomplice theory of accountability, it merges with the notion that a principal committed the offense. And so I suppose that's what I mean when I say that these are legally equivalent criminal actors. It's a distinction without a difference. However you want to think about it, once you sweep it in, it really doesn't change the analysis because the accomplice effectively is the principal. And then for purposes of the enumerated offense clause, I think Duenas-Alvarez says the same, right? Which that is a case that only focuses on the enumerated offense provision. And I'll note that all of the other federal appeals court cases that both sides cite only deal with the enumerated offense clause. But in Duenas-Alvarez, the Supreme Court was, again, clear that the law treats principles and aiders and abettors uniformly. And so that concept also applies to generic offense methodology. And I'll also note that here we're talking about the guidelines definition of a crime of violence. And the guidelines specifically include aiding and abetting a crime of violence as part of its definition of a crime of violence. And I don't think that that's something that the defendant has really reckoned with. Can we talk for a minute, please, about Borden? Yes. Because Carr cites Borden for the proposition that the language of the force clause was intended to mark out a narrow category of violent act of crimes in which a defendant makes a deliberate choice to wreak harm on another. And how is that consistent with the Illinois Common Design Doctrine that makes an accomplice guilty for unforeseeable violent conduct of the principle? Right. Judge, I guess I think of the two issues as somewhat distinct. And so let me try to answer your question. And if I'm not appreciating it, please stop me. And course correct. But with respect, I guess, to the phrasing of the Illinois Common Design Doctrine is not requiring reasonable foreseeability. I want to go back to a point that I wanted to make earlier, which is that, yes, that is the language that appears in the Illinois cases. But I don't think that they deserve the significance that the defendant ascribes to them. When you look at the natural and probable consequences doctrine across all jurisdictions that use it, and you look at the secondary sources, for example, that are cited in Duenas-Alvarez and in Alfred discussing the doctrine, those sources talk about there being a broad spectrum of foreseeability requirements across those jurisdictions. And then I think when you look, for example, at People v. Nguyen, which is the California case that's  set out to rob, I think they call it, houses of prostitution. And then they end up sexually assaulting a woman within that house. And the Supreme Court and the California court describes that sexual assault as merely being possible at the outset of the robbery. No one set out to sexually assault someone. They set out to commit a series of robberies. And it was possible, is the word that Duenas-Alvarez uses, at the outset of the crime, that a sexual assault would occur. And yet Duenas-Alvarez looked at those facts and said that under this natural and probable consequences doctrine used in California, that that still falls within the mainstream. And so when you take that set of facts and you compare them to the series of facts in the Illinois cases that both sides cite, I submit to you that there really isn't a difference. The Illinois cases all involve a series of situations where you have a burglary that turns into a murder, a robbery that turns into a murder, an attack with guns that turns into a murder. None of those scenarios are scenarios that you would say are not reasonably foreseeable to the defendant. And so going back to my initial statement, I recognize that the Illinois cases use this language that say reasonable foreseeability is not required. But when it comes back to the realistic possibility test, that backstop that we have with respect to the categorical approach, I don't think the defendant has met his burden in pointing to a factual scenario in Illinois cases in which someone was, in fact, held culpable, held liable for an act that genuinely was not reasonably foreseeable. I think, and as the government sets out in its brief, that Illinois' common design doctrine next to, for example, California's natural and probable consequences doctrine, as the Supreme Court discusses in Duenas-Alvarez, are really, at the end of the day, the same. And that's just, again, not me saying that. When I look at all the secondary sources, you're talking about, again, depending on which source you're counting, you're talking about anywhere from 12 to 28 states that follow that same doctrine. And Illinois is lumped in there. With respect to your Borden question, Your Honor, I think that's a separate issue, separate than the Illinois common design doctrine, because it is a separate argument attacking whether Illinois robbery can be a crime of violence, as based on the mens rea that is necessary for the use of force. And as the government points out in its brief, this was not an argument that the defendant advanced in the district court. It should be reviewed for plain error. And under plain error review, as this court recently held in love, it is not obvious, there's no plain error, that under this old version of the Illinois mens rea, that the crime of armed robbery in Illinois encompassed the reckless use of force. And on the merits, if we were to look at this de novo, the jury instructions that both sides have submitted to the court from the relevant time period clearly show that Illinois was instructing that the takings element of robbery could be proven in an intentional, knowing, or reckless manner, but the force still was needed to be directed at a victim and needed to satisfy the standards that are important. Can I turn quickly, because we don't have a lot of time left, to the sentencing. Yes. I am concerned, because the judge's comments at times suggested that he thought Mr. Carr was going to get the credit, and that that was something that wasn't within his purview to give, because he thought he was in federal custody, and therefore the BOP would give. And when you look at some of the court's comments and add on the fact that he really would let Mr. Carr's lawyer explain the distinction between credit and sentencing reduction, I am concerned that there may have been a misunderstanding on the court's part about the court's authority to reduce the sentence. I understand the concern, Judge St. Eve. I think, I guess, where I part ways with the defendant is when, I think earlier, Mr. Hardwick said that it was very clear to the court that what Mr. Carr was asking for was a sentence reduction. And that's not what I see in the record. When I look at the sentencing memorandum, for example, I counted up at least four instances in which the defendant is asking for credit or an adjustment. But what about the fact that the defendant really didn't get the opportunity to explain what he was seeking before the court? I think he tried three or four separate times, and the court essentially said, stop. I don't want to hear it. That's what concerns me. Yeah, and I guess I don't read the transcript quite the same way. I would also say that the defendant, the argument on appeal is that the district court evinced a misunderstanding of what the law allowed him to do or what the BOP would do. It's not an argument like the argument in Kimball, for example, where the defendant's argument was the court did not address my principal argument in mitigation. Sure, I think the argument is that the court would have given, made statements suggesting that the defendant was entitled to a reduction or a credit and thought that that was a credit that BOP would have given and was not within the court's purview to do. And I simply, I read Judge Norgal as simply saying, to the extent that you are entitled to credit for time spent in federal custody in the official detention sense of the word, that that is the purview of the BOP and not mine. And I don't view that as legal error. Thank you. I'm long past my time. Thank you, counsel. Thank you. Mr. Hardwick, anything further? Yes, thank you, Your Honor. The government is trying to conflate Illinois' rule with the natural and probable consequences rule. That's not right. They cite this Nguyen, California case. What Nguyen says is that under generic natural and probable consequences doctrine, liability, quote, depends on whether, under all of the circumstances presented, a reasonable person in the defendant's position would have or should have known that the charged defense was a reasonably foreseeable consequence of the act aided and abetted by the defendant. And under generic law, that goes to a jury. The jury decides whether the charged crime was reasonably foreseeable to a defendant. Illinois dispenses with that requirement, which is what makes it overbroad. Illinois is the only state that dispenses with that requirement. I'd also note that the government concedes that the Ninth Circuit's decision in Alfred v. Garland is the opposite of what they're asking you to do here. They're asking you to create a circuit split. The authority currently is all on the side of the kind of analysis that the plurality does in Alfred v. Garland. So they're asking this court to chart a new path here. And then the last thing I would say is that Judge Robner's point about Borden is exactly right, that the force clause draws a distinction between culpable and active offenders. Illinois has tried to erase that distinction. And that makes Illinois robbery too broad under the force clause. Thank you. Thank you very much.  And the court.